# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SPENCER CRANNEY, MITCHELL AMOS, CATHERINE SAMUELSON, DOUGLAS BROWN, and RICHARD MONIGHETTI et al., on behalf of themselves and all other employees similarly situated,<br><br>            Plaintiffs,<br><br>vs.<br><br>CARRIAGE SERVICES, INC., CARRIAGE FUNERAL HOLDINGS, INC., CFS FUNERAL SERVICES, INC., CARRIAGE HOLDING COMPANY, INC., CARRIAGE MANAGEMENT, L.P., CARRIAGE INVESTMENTS, INC., MELVIN C. PAYNE and LORIE PARAMETER,<br><br>            Defendants. | Case No.: 2:07-cv-1587-RLH-PAL<br><br>**O R D E R**<br><br>(Motion for Collective Action Notification–#2;<br>Motion to Shorten Time–#3;<br>Motion to Transfer–#41) |

      Before the Court is Plaintiffs' **Motion for Collective Action Notification** (#2), filed November 28, 2007. The Court has also considered Defendants' Opposition (#45), filed January 28, 2008, and Plaintiffs' Reply (#53) and accompanying documents (##54–63), filed February 11, 2008.

/ / / /

1

Also before the Court is Plaintiffs' **Request for Shortening Time for Defendants' Responsive Briefing to Plaintiffs' Motion for Collective Action Notification** (#3), filed November 28, 2008.

Also before the Court is Defendants' **Motion to Transfer** (#41), filed January 16, 2008. The Court has also considered Plaintiffs' Opposition (##49–50), filed February 4, 2008, and Defendants' Reply (#64), filed February 19, 2008.

## BACKGROUND

Plaintiffs are eighty-four current and former employees of Defendants. Defendants operate 170 funeral homes and thirty-seven cemeteries in twenty-seven different states. Plaintiffs allege that Defendants suffered or permitted them to work and did not pay them their regular or statutorily required rate of pay for all hours worked. As relevant to the present Motions, Plaintiffs allege that Defendants maintained four illegal policies:

*Community Work*. Defendants required their hourly employees to perform volunteer work for local community groups to generate business for Defendants, but did not compensate their employees for the time they spent working for these organizations.

*Failure to Include All Remuneration in Overtime Calculation*. Defendants did not include all remuneration, such as bonuses, commissions, and flat-rate payments, in the calculation of its employees' overtime pay.

*On-Call Pay*. Defendants required employees to handle phone calls and other work-related issues after hours while on "on-call" duty without compensation.

*Pre-Needs Appointments*. Defendants required that certain employees present pre-needs policies (an insurance product that allows an individual to pre-pay for funeral services) to potential customers after normal work hours without compensation.

On November 28, 2007, Plaintiffs filed this collective action against Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and a class action for claims

pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1332(a)(3), 1104(a)(1), 1059(a)(1) and numerous state statutes.

## DISCUSSION

Plaintiffs move the Court to authorize notice of this collective action to all of Defendants' current and former affected employees pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Defendants oppose Plaintiffs' request for collective action notification and move the Court to transfer this case to the Southern District of Texas. Because Defendants' Motion to Transfer potentially moots Plaintiffs' Motion for Collective Action Notification, the Court first addresses Defendants' Motion.

**I.     Motion to Transfer**

"[A] district court may transfer any civil action to any other district or division where it might have been brought" for "the convenience of the parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a). A party moving for transfer must first show that the action could have been brought in the transferee district. *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992). The court then balances the competing public and private interest factors to determine if transfer is appropriate, recognizing that "1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient," *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964). "Transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer," and neither is the court required to determine the best venue for the action. *Gherebi v. Bush*, 352 F.3d 1278, 1303 (9th Cir. 2003) (internal quotations omitted), *vacated on other grounds*, 542 U.S. 952 (2004).

**A.     Venue in the Southern District of Texas**

For an action brought in federal court "not founded solely on diversity of citizenship," venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. § 1391(b). "For purposes of venue under this chapter, a

defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Here, this federal question case "might have been brought" in the Southern District of Texas because the Defendants are all residents of Texas. The corporate defendants have their principal place of business in Texas and are therefore subject to personal jurisdiction in the state. Mr. Payne and Ms. Parameter are both residents of Houston, Texas. Consequently, venue would be proper in the Southern District of Texas, and this action "might have been brought" there.

### B. Public and Private Interest Factors

"Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge." *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). In making its determination, a court must balance the competing public and private interests on a case-specific basis with no single factor necessarily determinative. Several courts have enumerated lists of factors potentially applicable in a given case. *See, e.g.*, *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (listing four private factors and five public factors); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000) (enumerating eight factors and listing two other significant factors). Here, the Court finds the following factors relevant: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process; (3) the cost of litigation in each forum, including the cost of witness travel; (4) Plaintiffs' choice of forum and the Parties' contacts with that forum, especially as they relate to Plaintiffs' claims; (5) the court most familiar with the governing law; and (6) the public policy of the forum state. As explained more fully below, because these factors do not weigh in favor of transfer, the Court denies Defendants' Motion to Transfer to the Southern District of Texas.

### 1. Access to Sources of Proof

Here, while many of the corporate documents relating to payroll, training, and compensation policies are likely located in the Defendants' headquarters in Houston, other

1  documents are likely located in the various offices scattered throughout the country. Moreover,
2  regardless of where the proceedings occur, the nationwide scope of this action convinces the Court
3  that transferring to the Southern District of Texas would do little more than shift the convenience
4  of obtaining certain evidence, while making it more difficult to obtain other sources of evidence.
5  By Defendants' own account, it maintains a highly decentralized corporate structure and relies on
6  local managing partners (typically former owners of acquired businesses) for day-to-day
7  operations. As such, it appears that the Parties will need to discover materials and depose
8  witnesses at each of the offices where employees or former employees opt into the collective
9  action. Accordingly, the Court finds this factor disfavors transfer.

10 **2.     Availability of Compulsory Process**

11        As to this factor, the Court finds the nature and scope of this action are such that
12 transferring to Texas—and thereby providing for compulsory process in Texas—would not
13 significantly affect the prosecution of this lawsuit. It appears to the Court, and Defendants have
14 not shown otherwise, that the major witnesses in this action are the Parties themselves or
15 employees of Defendants. As such, compulsory process likely will not be necessary to obtain the
16 testimony of these witnesses, and this factor does not favor transfer.

17 **3.     Cost of Litigation**

18        In the Court's view, transferring this case to the Southern District of Texas is
19 unlikely to significantly reduce the costs of litigation for either Party. While transferring the case
20 would make it easier for Mr. Payne and Ms. Parameter—both Houston residents—to attend the
21 courtroom proceedings, it would also make it more difficult for the three named Plaintiffs who are
22 residents of Nevada. Moreover, both Plaintiffs and Defendants have out-of-state counsel that are
23 not based in Nevada or Texas. Accordingly, the Court finds that transferring the case would not
24 significantly reduce the costs of litigation, and thus, this factor disfavors transfer.
25 /
26 /

### 4.  Plaintiffs' Choice of Forum and the Parties' Nevada Contacts

"The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co.*, 805 F.2d at 844. But, "when an individual . . . represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). Moreover, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or subject matter, the plaintiff's choice is entitled only to minimal consideration." *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). Here, the Court must give Plaintiffs' choice of a Nevada forum less weight because Plaintiffs represent a class of individuals comprised of citizens of several states. But the Parties do have sufficient contacts with the state such that Plaintiffs' choice of forum is not unreasonable. Sixteen of the Plaintiffs are Nevada residents, including three of the named Plaintiffs, and Defendants state that they have fifty-one current and former employees in Nevada. Also, Defendants' significant business operations in Nevada subject it to personal jurisdiction within the state. Consequently, the Court finds that Plaintiffs' choice of forum is not unreasonable, that it merits some deference, and that it weighs against transfer.

### 5.  Court Most Familiar with the Governing Law

As alleged in Plaintiffs' Complaint, this action involves questions of both federal and state law. The Court finds that transferring this case to the Southern District of Texas would do little to increase the Court's familiarity with the governing law. First, a court in the Southern District of Texas would not be more with familiar Plaintiffs' FLSA and ERISA claims, which involve purely issues of federal law. Next, while a Texas court would be more familiar with Texas law, it would be less familiar with Nevada law, and likely no more familiar with Plaintiffs' other claims under California, Connecticut, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Rhode Island, Washington, and West Virginia law. As such, this factor weighs against transfer.

### 6. Public Policy of the Forum State

In Nevada's equivalent to the FLSA, Chapter 608 of the Nev. Rev. Stat., it states:

> The Legislature hereby finds and declares that the health and welfare of workers and the employment of persons in private enterprises in this State are of concern to the State and that the health and welfare of persons required to earn their livings by their own endeavors require certain safeguards as to hours of service, working conditions and compensation therefor.

Nev. Rev. Stat. § 608.005. The Legislature's statement of concern evinces a strong public policy of protecting residents from unlawful wage and labor practices. With three named plaintiffs, sixteen total plaintiffs, and a total of fifty-one current and former employees who worked for Defendants in Nevada, the Court finds that Nevada has a significant interest in providing a Nevada forum for the adjudication of wage and labor claims in this case. Consequently, this factor weighs against transferring the case out of Nevada.

### C. Conclusion

The Court finds that transferring this case to the Southern District of Texas would do little more than shift some of the inconvenience of this nationwide action from the Defendants to the Plaintiffs. Accordingly, the Court denies Defendants' Motion to Transfer.

## II. Motion for Collective Action Notification

Section 16(b) of the FLSA authorizes an employee to bring a "collective action" on behalf of all similarly situated employees. 29 U.S.C. § 216(b). While the FLSA does not define "collective action," the legislative history indicates that a "collective action [is] an action brought by an employee or employees for and in behalf of himself or themselves and other employees similarly situated." *Gray v. Swanney–McDonald, Inc.*, 436 F.2d 652, 655 (9th Cir. 1971) (quoting H.R. REP. No. 80-326, at 13 (1947)). Unlike a class action, however, where a class member is bound by the judgment unless she opts-out of the suit, in a collective action an employee must opt-in to a suit by filing written consent with the district court or she is not bound by the result. *Partlow v. Jewish Orphans' Home of S. Cal., Inc.*, 645 F.2d 757, 758, 759 (9th Cir. 1981), *abrogated on other grounds by Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 164 (1989).

AO 72
(Rev. 8/82)

Consequently, notice in a collective action has less to do with due process. *McElmurray v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007). Instead, notice is meant to assist the plaintiffs in lowering their individual costs by pooling their resources, and affords the judicial system an efficient means of resolving common issues of law and fact. *Hoffman–La Roche*, 493 U.S. at 170. As such, a district court has discretion to authorize the named plaintiffs to send notice to all potential plaintiffs and may set a deadline for when plaintiff consents are due. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000).

In determining whether potential plaintiffs are "similarly situated," courts generally follow one of two approaches: (1) evaluate the FLSA collective action in a manner analogous to Fed. R. Civ. P. 23's class certification requirements; or (2) apply a two-step approach that involves conditionally certifying the collective action early in the litigation for the purposes of notice based on a lenient "similarly situated" standard and then applying a more rigorous test, usually on defendant's motion for decertification, after the completion of discovery. *See Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004); *see generally* 7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1807 (3d ed. 2005). As the Ninth Circuit does not appear to have opined on this issue, the Court follows the second approach, which the majority of courts seem to have adopted or approved. *Leuthold*, 224 F.R.D. at 466. *See, e.g.*, *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208 (11th Cir. 2001); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001).

At this early stage of the litigation the Court evaluates Plaintiffs' Motion for Collective Action Notification based on the first-tier, more lenient "similarly situated" standard. Courts, at this stage, typically rely only on the pleadings and any affidavits that have been submitted, and some courts only require that plaintiffs make substantial allegations that the putative class members were subject to a common policy. *Leuthold*, 224 F.R.D. at 468. Here, the

1    Court finds that Plaintiffs' affirmations and allegations meet the threshold showing for notice and
2    conditional certification.  While Defendants submit substantial briefing and competing
3    declarations that currently create several disputed issues of law and fact, the Court believes that by
4    permitting collective action notification and discovery, it will be better able to evaluate the Parties'
5    contradictory claims.  In particular, the Court believes that much of the Parties' conjecture
6    regarding whether Defendants' policies are centralized or decentralized will fade away after
7    Defendants' current and former employees nationwide are given opportunity to opt-in to this suit
8    and sufficient discovery is taken.  The Court recognizes that its decision creates significant costs
9    for the Defendants, especially if Plaintiffs' claims are later shown to lack merit.  But the Court
10   finds that Plaintiffs' allegations and declarations satisfy its lenient burden at this first stage of the
11   inquiry.  Consequently, the Court grants Plaintiffs' Motion for Collective Action Notification.

12           Moreover, as the Defendants have not objected to Plaintiffs' proposed notice, the
13   Court approves the notice and orders the following:

14   1.   Defendants shall provide Plaintiffs' counsel a list, both electronically and by hard
15        copy, of all individuals who meet the class descriptions specified in this Order,
16        including their current or last known address, phone number, email address, and
17        dates of employment within thirty days.
18   2.   Defendants shall post notices and opt-in forms in a conspicuous place, such as
19        break rooms, at Defendants' locations for a period of ninety days.
20   3.   Defendants shall email notice to the employees who meet the class descriptions
21        specified in this Order within thirty days.
22   4.   Defendants shall publicize notice in their employee newsletter or similar
23        publication, if any, in the next three issues of such a publication.
24   5.   Plaintiffs shall file any additional opt-in consent forms with the Court within one
25        hundred and twenty days.  After this time, the class will be closed and the Court
26        will no longer accept additional opt-in consent forms.

### III. Motion to Shorten Time

The Court effectively denied Plaintiffs' request for an order shortening time in its December 12, 2007, Order (Dkt. #26) that granted Defendants' an extension of time to respond to Plaintiffs' Motion for Collective Action. The Motion is denied as moot.

### CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion to Transfer (#41) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Collective Action Notification (#2) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Shorten Time (#3) is DENIED as moot.

Dated: February 29, 2008.

_____
ROGER L. HUNT
Chief United States District Judge